IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DONNIE C. JOHNSON, ) | CASE NO. 1:12 CV 973 |
| ) | |
| Plaintiff, ) | JUDGE DONALD C. NUGENT |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OF OPINION** |
| DR. NICOLE SALVO, ) | |
| ) | |
| Defendant. ) | |

*Pro se* Plaintiff Donnie C. Johnson filed the above-captioned action against Dr. Nicole Salvo. The attachments to the Complaint indicate Plaintiff had two appointments with Dr. Salvo in 2009 to monitor healing of a foot fracture. Plaintiff does not specify the relief he seeks.

Plaintiff also filed an Application to Proceed *In Forma Pauperis*. That Application is granted.

**Factual and Procedural Background**

Plaintiff's Complaint consists of one sentence: "See SF 95 pertaining to claim for damage, injury or death." (ECF No. 1 at 1.) Attached to the Complaint is Standard Form 95 for filing an administrative tort claim with a federal agency. Under "basis of claim," Plaintiff states:

> The basis of my claim is, I relied on the professional treatment of the
> Louis Stokes Akron/Cleveland VA Outpatient Podiatry Clinic, for the

> treatment/care of an injury I sustained to my left foot, during an exercise I was performing on June 16, 2009. The treatment of care according to a second professional opinion I received from Jeremy F. Davis, DPM - Akron Ambulatory Foot Su rgeons, (was at best substandard). Due to the standard of care of my left foot, it complicated the correct healing and led to further damages which included painful surgery, loss of mobility, depression and income. Please see attachments.

(ECF. No. 1 at 2.) To this form, Plaintiff attaches 88 pages of exhibits, comprised of 72 pages of random medical records from various facilities and 16 pages of correspondence with the Veterans Administration. The form places a value on his claim of $350,000.00.

From the exhibits, it appears that Plaintiff fractured his left foot at the fifth metatarsal bone on June 16, 2009 while exercising at or near his home in Akron, Ohio. He went to the Akron Veterans Administration ("VA") Outpatient Clinic where his foot was x-rayed. He was informed by Dr. Wear that his foot was fractured. He was transported to the Cleveland VA Clinic that same day for an orthopaedic evaluation. At the Cleveland facility, he received additional x-rays which confirmed the diagnosis. He was evaluated by Dr. Rasmussen who wrapped his foot in a Jones Compression bandage and gave him a prescription of Vicodin for pain. Dr. Rasmussen told him he would receive crutches and a walking boot. A suitable boot was not in stock, however, Plaintiff was issued a set of crutches and told not to put any weight on the fractured foot. A follow-up appointment was scheduled for June 25, 2009.

Plaintiff requested that his care be transferred to the Akron facility closer to his home. He was referred to Dr. Salvo. His medical records suggest his first appointment with Dr. Salvo occurred on June 23, 2009. Dr. Salvo writes in her notes from this appointment that Plaintiff still has some pain when the site of the fracture is palpated. She indicated a Jones Compression bandage was

applied and a CAM walker was ordered.[1] She stated:

> Pt told strict NWB [no weight bearing], he informs that he will walk on the foot when he 'has too' [sic] (ie. when preparing foot[2] and getting into and out of his jeep). Pt was informed of the possible complications associated with noncompliance, including but not limited to, nonunion, malunion, long term pain.

(ECF No. 1-2 at 6). Plaintiff states in his administrative tort filing that he told his physicians that he needed to put weight on his injured foot because his residence had stairs which he had to climb, and because his truck had a manual transmission requiring use of his left foot to engage the clutch. Dr. Salvo noted that Plaintiff's next appointment should be in two weeks.

Plaintiff's medical records indicate he had a second appointment with Dr. Salvo on July 7, 2009. Dr. Salvo's notes for July 7, 2009 indicate additional x-rays were taken of Plaintiff's foot. She notes that the CAM walker is pending. He was reminded again of the need for strict compliance with the no weight bearing ("NWB") instruction and was again reminded of the possible complications associated with noncompliance including nonunion, malunion, and long term pain. Dr. Salvo reviewed Plaintiff's x-rays later that day and added in his chart:

> X-rays reviewed. Increased gapping at fracture site. At the very least needs closed reduction/BK cast. Spoke with [VA Resident Podiatry Surgeon Dr. Jennifer] Regler, PGY-2. Pt to be seen today at WP. However, spoke with Pt and he cannot go to WP until Tuesday or later (reasons unclear, but stated he was concerned about how a cast would look at a function he needs to attend on Monday??). Discussed with pt the urgency for CR/cast. He understands that this will slow

---

[1] CAM is an acronym for "Controlled Ankle Movement." It is also called a high-top or low-top walking boot, cam boot, foot brace, ankle boot or ankle walker. *See* http://www.ehow.com/facts_7197428_cam-walker-boot_.html. A CAM walker consists of a soft, one-piece foam "boot," which opens entirely down the front. http://www.livestrong.com .

[2] Although Dr. Salvo uses the word "foot," it is possible that she intended to type the word "food."

-3-

> his healing process and he increases the possible need for ORIF.[3] Pt has been noncompliant with his NWB, which is documented in previous notes. Pt to call WP pod for appt.

(ECF No. 1-2 at 10).

There are no other notes in the medical records which were authored by or pertain to Dr. Salvo. It does not appear that Plaintiff had contact with Dr. Salvo after this visit.

At some point thereafter, medical personnel at the VA Clinic recommended surgery as an option to Plaintiff. Because the pages of Plaintiff's medical records are not in any chronological order and are possibly incomplete, there is no indication of which physician or physicians made this recommendation. From the medical records, it appears Plaintiff had an appointment with Dr. Macevoy on July 14, 2009. In his notes, Dr. Macevoy states, "[Plaintiff] admits to using his foot regularly although he had been advised to stay off it." (ECF No 1-2 at 34.) Dr. Macevoy indicates he discussed with Plaintiff "in great detail" the conservative and surgical treatment approaches for the condition. (ECF NO 1-2 at 35.) He noted, "Patient understands options and has decided to partake in surgical correction of his condition." (ECF No. 102 at 35.)

Plaintiff had surgery on his foot on July 27, 2009. The post operative notes indicate that the surgery to his foot on July 27, 2009 was performed by Drs. Regler, Kimmel, Grady, and Macevoy. The medical records further indicate Plaintiff was treated by other physicians after the surgery and there were no complications from the surgery.

The exhibits include an administrative tort claim submitted to the VA on March 23, 2010. It was returned to Plaintiff on March 26, 2010 because it did not provide adequate information. He

---

[3] O.R.I.F. is an abbreviation for Open Reduction Internal Fixation. Open reduction internal fixation is a method of surgically repairing a fractured bone. *See* http://orthopedics.about.com/cs/brokenbones/g/orif.htm

re-filed the form on April 5, 2010. That claim was denied, and Plaintiff sought reconsideration of that decision. He received a letter from the VA on February 7, 2011, upholding the original agency decision. He appealed that decision to the Department of Veteran's Affairs in Washington DC on June 13, 2011. The claim was denied on December 12, 2011.

## Standard of Review

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[4] *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. The Plaintiff is not

---

[4] An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir.1998).

## Discussion

The Court has given this *pro se* Complaint a liberal construction and active interpretation and finds that Plaintiff has not adequately stated a claim upon which relief may be granted. The Complaint itself contains no factual allegations. It refers the Court only to an administrative tort claim form, which, in turn, refers the Court to 88 pages of random exhibits. The administrative tort claim form indicates in general terms that the professional treatment he received at the Louis Stokes Akron and Cleveland VA Outpatient Podiatry Clinics was substandard. There is no statement of the type of claim Plaintiff seeks to pursue against Dr. Salvo, the factual basis of that claim, or the relief he seeks.

Based on the Plaintiff's use of an administrative tort claim form as the body of his Complaint, it is possible that Plaintiff is attempting to assert a tort claim against Dr. Salvo. The Westfall Act immunizes federal employees from liability for torts they commit when acting within the scope of their federal employment. 28 U.S.C. § 2679(b)(1). When a federal employee commits a tort while acting within the scope of his or her employment, any private remedy for that tort must be sought against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 (the "FTCA"). As a threshold question in every claim under the FTCA, the Plaintiff must state a viable tort claim

against a federal employee.

Here, Plaintiff does not provide sufficient allegations to meet the basic pleading standards. He alleges no facts to suggest how he believes Dr. Salvo's treatment of his injury was tortious. In fact, the medical records, which provide the entire factual basis for the Complaint, suggest his interactions with Dr. Salvo were limited to two office visits which occurred over a two week period. Her role appears to have been one of monitoring Plaintiff's healing progress in the first weeks after his injury. She was not involved in the initial diagnosis or treatment plan. He was treated by another physician at the Cleveland VA Clinic on the day of his injury. Plaintiff asked to follow up with a physician at the Akron VA Clinic which is closer to his home and was referred to Dr. Salvo. She met with him on June 23, 2009 and July 7, 2009. On both occasions she examined his foot to determine if it was healing properly. She also noted both times that he was walking on his injured foot and advised him of the potential consequences of continuing to do so. After reviewing a second set of x-rays, Dr. Salvo then referred him to the "WP" department at the Clinic where he presumably met with Drs. Regler and Macevoy. That appears to be the extent of Plaintiff's interaction with Dr. Salvo. There is no indication in the medical records that Dr. Salvo was involved in the decision to operate on the foot. Records suggest Dr. Macevoy discussed the option of surgery versus a more conservative approach. Plaintiff consented to surgery. Drs. Regler, Kimmel, Macevoy and Grady performed the operation. Plaintiff's post operative care appears to have been with another physician, not Dr. Salvo. Plaintiff does not specify which actions of Dr. Salvo form the basis of his claim and the Court is unable to determine this from the exhibits attached to his Complaint.

Furthermore, while Plaintiff states in the administrative tort form that Dr. Jeremy F. Davis, DPM opined that the treatment he received was substandard, this information also provides no

indication of the nature of Plaintiff's claim against Dr. Salvo. He attaches a patient summary from Dr. Davis written after what appears to be a consultation. In this summary, dated March 25, 2011, Dr. Davis indicates:

> At this point, patient wants to know if he was treated fairly at the VA. Patient did bring his notes which were evaluated. Patient was immobilized in a Jones compression dressing and placed with crutches. Patient followed up multiple times and was still continued to be placed in a Jones Compression dressing and crutches. Patient was noted in the notes to be noncompliant and walking on his foot. ...Patient states that he does not think he was treated fairly in regards to his immobilization. Patient was informed the Jones compression dressing is immobilization with the use of crutches....Patient states that [his foot] still bothers him and want to know if this is normal. Patient was informed that postoperative surgery involving the fracture may take up to six months to a year to heal. Patient's previous MRI on his left foot shows healing potential with no new trauma or injury to the left foot. Good surgical outcome is noted in the notes. Patient is ambulating in a regular shoe with mild tenderness noted to the area. Patient is discharged to p.r.n. schedule.

Contrary to Plaintiff's assertion, there is no indication in this summary that Dr. Davis believed Plaintiff had received substandard treatment. Moreover, there was no mention of any procedure or treatment performed by Dr. Salvo.

Although the standard of review is liberal for *pro se* pleadings, a Plaintiff is required to include more than bare assertions of legal conclusions. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726-27 (6th Cir.1996). The Complaint must "give the Defendants 'fair notice of what the Plaintiff's claim is and the grounds upon which it rests.'" *Id.* at 726. While Rule 8 does not require the Plaintiff to provide detailed factual allegations, he must plead facts that suggest more than the sheer possibility that the Defendant acted unlawfully. *Iqbal*, 129 S.Ct. at 1949. Plaintiff has not provided a definitive legal cause of action he desires to pursue against this Defendant and has not

given a sufficient indication of the facts he believes support his claim.

Furthermore, "[n]either the Court nor [the] Defendant are obligated to search through the Complaint and its voluminous exhibits in order to glean a clear and succinct statement of each claim for relief. It is Plaintiff's responsibility to edit and organize [his] claims and supporting allegations into a manageable format." *Hollon v. Eastern Ky. Correctional Complex*, No. 10–CV–177–KSF, 2010 WL 2924091, at *2 (E.D. Ky. July 22, 2010); *Laster v. Pramstaller*, No. 08–CV–10898, 2008 WL 1901250, at *2 (E.D. Mich. April 25, 2008). The Court cannot sift through the large amount of random material Plaintiff attached without explanation to his Complaint and piece together claims from the fragments on his behalf. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985). To do so would "require ...[the courts] to explore exhaustively all potential claims of a *pro se* plaintiff, ... [and] would...transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Id.* at 1278. It also places an unfair burden on the Defendant to speculate on the claim or claims Plaintiff may be asserting against her and the factual basis support those claims. The Court has given this pleading both a liberal construction and an active interpretation, and finds that Plaintiff has not met the pleading standards of Federal Civil Procedure Rule 8.

### Conclusion

Accordingly, Plaintiff's Application to Proceed *In Forma Pauperis* is granted and this action is dismissed pursuant to 28 U.S.C. §1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[5]

---

[5] 28 U.S.C. § 1915(a)(3) provides:

(continued...)

IT IS SO ORDERED.

_____
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

Dated: __August 23, 2012__

---

[5](...continued)
An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.